IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ETHEL BURRIS, *individually and as Executrix of the Estate of Leonard F. Burris (deceased)* | Case No. 1:21-cv-02107-PAB (lead) 1:21-cv-02143-PAB |
| Plaintiff, -vs- | JUDGE PAMELA A. BARKER |
| MONTEFIORE, et al., Defendants. | MEMORANDUM OPINION AND ORDER |

Currently pending is Plaintiff Ethel Burris's, individually and as Executrix of the Estate of Leonard F. Burris (deceased), Motion for Remand. (Doc. No. 12.) Defendants Montefiore, the Montefiore Foundation, The Montefiore Home, The Montefiore Housing Corporation, and Menorah Park Foundation ("the Facility Defendants") filed a Memorandum in Opposition to Burris's Motion on December 8, 2021, which Defendants Tina King and Marie Gelle joined. (Doc. Nos. 14, 15.) Also on December 8, 2021, Defendant Ariel Hyman filed a separate Memorandum in Opposition, which is substantively identical to the Facility Defendants' Opposition. (Doc. No. 16.) Burris filed a Reply in Support of her Motion on December 15, 2021. (Doc. No. 17.) All Defendants filed a Joint Sur-Reply on December 20, 2021. (Doc. No. 20-1.)

Also pending is the Facility Defendants' Motion for Leave to File Declaration *Instanter*, filed on January 6, 2022, in response to Burris's Notice of Supplemental Authority, filed December 29, 2021. (Doc. Nos. 20, 19.) Burris filed an Opposition to the Facility Defendants' Motion for Leave on January 13, 2022. (Doc. No. 21.)

For the following reasons, Burris's Motion for Remand is GRANTED and the Facility Defendants' Motion for Leave to File Declaration *Instanter* is DENIED.

I.  **Background**

   A.  **State Court Complaint**

On October 7, 2021, Burris filed a Complaint against Defendants in the Cuyahoga County Court of Common Pleas, alleging four claims. (Doc. No. 1-2, ¶¶ 26-35, 36-45, 46-55, 56-59.) In her Complaint, Burris alleges that her decedent, Leonard F. Burris, resided at the Facility Defendants' facility, The Montefiore Home, from February 3, 2020 through November 29, 2020. (*Id.* at ¶ 27.) Defendant Hyman acted as the administrator for the facility. (*Id.* at ¶ 7.) King and Gelle, both licensed nurses, worked at the facility. (*Id.* at ¶¶ 8-9.)

Burris alleges that early in the COVID-19 pandemic, Defendants "implemented some restrictive protocols, or at least were supposed to," but ultimately failed to follow these protocols. (*Id.* at ¶ 14-18.) Burris further alleges that "COVID-19 test results were falsified or improperly ran by all Defendants." (*Id.*) at ¶ 19.) According to Burris, Defendants ignored their own employees' complaints about Defendants' COVID-19 prevention and treatment protocols and refused to allow Defendants King and Gelle to use the "Point of Care" machine, which would have generated COVID-19 test results in minutes instead of days. (*Id.* at ¶¶ 20-21.) Burris alleges that Defendants refused to use the "Point of Care" machine because they feared "that it would reveal 'too many' positive results." (*Id.* at ¶ 22.) Burris alleges that Defendants' decision not to implement recommended COVID-19 protocols, as well as the understaffing of the facility, resulted in unsafe conditions that led to Leonard's injuries and death. (*Id.* at ¶ 24.)

Based on these allegations, Burris asserts five causes of action. In bringing these claims, Burris makes certain allegations that are relevant here. In Count I, Burris alleges that from about September 2020 through the end of October 2020, Defendants "recklessly, intentionally, willfully,

and wantonly conducted improper and false testing of" Leonard for COVID-19. (*Id.* at ¶ 30.) Further, Burris alleges that "Defendants recklessly, intentionally, willfully, and wantonly hid the fact that other patients and residents of Montefiore were infected" with COVID-19, "thereby exposing" Leonard and all other residents to COVID-19. (*Id.*) In Count II, Burris alleges that from September 2020 through October 2020, "Defendants were grossly negligent in addition to being reckless[ ], intentional[ ], willful[ ], and wanton[ ] in that they hid the fact that other patients and residents of Montefiore were infected with" COVID-19, thereby exposing Leonard and all other residents to COVID-19. (*Id.* at ¶ 42.) In Count III, Burris alleges that on October 13, 2020, "Defendants[ ] recklessly, intentionally, willfully, and wantonly conducted improper and false testing" of Leonard for COVID-19. (*Id.* at ¶ 50.) In Count IV, Burris alleges that "[a]s a direct and proximate result of Defendants' gross negligence and reckless, intentional willful, and wanton disregard for" Leonard's rights and interests, Defendants damaged Leonard and caused his death and that Burris is entitled to punitive damages as a result. (*Id.* at ¶ 58.)

  **B.**  **Notices of Removal**

On November 5, 2021, the Facility Defendants removed this action from the Cuyahoga County Court of Common Pleas to the United States District Court for the Northern District of Ohio. (Doc. No. 1.) In their Notice of Removal, the Facility Defendants asserted that the case was removable under 28 U.S.C. § 1441(a) pursuant to the Court's original federal jurisdiction under 28 U.S.C. § 1331. (Doc. No. 1, ¶ 4.) The Facility Defendants claimed that, on its face, Burris's action arose under the federal Public Readiness and Emergency Preparedness Act, 42 U.S.C. § 247d-6d (the "PREP Act") and claimed that the PREP Act completely preempted Burris's state law claims. (*Id.* at

¶¶ 5-9.) The Facility Defendants' counsel conferred with King's, Gelle's, and Hyman's counsels regarding removal, and King, Gelle, and Hyman all consented. (*Id.* at ¶ 12.)

On November 10, 2021, five full days after the Facility Defendants removed this action to this Court, Defendant Hyman separately removed this action again to this Court. On November 17, 2021, the Court consolidated Hyman's separately-removed case with the Facility Defendants' case in the interest of convenience to the parties and economy in judicial administration. (*See* ECF Entry 11/17/2021.) In his Notice of Removal, Hyman reasserts the same argument regarding removal under 28 U.S.C. § 1441(a) as set forth in the Facility Defendants' Notice of Removal. (*See* Case No. 1:21-cv-02143-PAB, Doc. No. 1, ¶ 4.) Hyman's Notice of Removal also includes a single reference to 28 U.S.C. § 1442(a), the federal officer removal statute, but no argument associated therewith. (*Id.* at ¶ 12, "Original jurisdiction is also through an action pursuant to 28 U.S.C. § 1442(a)(1).")

### C. Motion for Remand

On November 24, 2021, Burris filed a Motion for Remand. (Doc. No. 12.) The Facility Defendants filed an Opposition on December 8, 2021, in which King and Gelle joined. (Doc. No. 14, 15.) Hyman filed a separate Opposition on December 8, 2021, although his Opposition is nearly identical to the Facility Defendants' Opposition. (Doc. No. 16.) Burris filed a Reply in Support of her Motion on December 15, 2021. (Doc. No. 17.) Thereafter, all Defendants filed a Joint Sur-Reply on December 20, 2021. (Doc. No. 18-1.)

On December 28, 2021, Burris filed a Notice of Supplemental Authority.[1] (Doc. No. 19.) On January 6, 2022, the Facility Defendants filed a Response to Burris's Supplemental Authority, as well as a Motion for Leave to File Declaration *Instanter*. (Doc. No. 20.) The Facility Defendants seek to

---

[1] This filing is miscaptioned as a "Reply in Support of Motion for Remand" on the docket.

file the Declaration of former facility Chief Operating Officer Richard Schwalberg to refute certain analyses set forth in Burris's Supplemental Authority. (*Id.*) Burris filed an Opposition to the Facility Defendants' Motion on January 13, 2022. (Doc. No. 21.)

**II.     Standard of Review**

Under 28 U.S.C. § 1441(a), defendants may remove a civil action from a state court only when the federal court has original jurisdiction over the claims alleged in the state court complaint. That is, any civil case filed in state court may be removed to federal court if the case could have been brought originally in federal court. 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Absent jurisdiction based upon diversity of citizenship (28 U.S.C. § 1332), federal question jurisdiction under 28 U.S.C. § 1331 is required. *Caterpillar*, 482 U.S. at 392.

"The party seeking removal bears the burden of demonstrating that the district court has original jurisdiction." *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006). Federal courts are courts of limited jurisdiction and possess only the power authorized by the United States Constitution or by statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "'[B]ecause lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts resolved in favor of remand.'" *Eastman*, 438 F.3d at 549-50 (quoting *Brown v. Francis*, 75 F.3d 860, 864-65 (3d Cir. 1996) (further citation omitted)).

Federal question jurisdiction exists in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. An action "arises under" federal law if: (1) "federal law creates the cause of action[,]" or (2) "the vindication of a right under state law necessarily

5

turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808–09 (1986) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983)).

The presence or absence of federal-question jurisdiction is generally governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. The rule makes the plaintiff the master of her claims, and she may avoid federal jurisdiction by exclusive reliance on state law. *Caterpillar*, 482 U.S. at 392, 107 S.Ct. 2425 (internal citation omitted). "Accordingly, if the plaintiff chooses to bring a state law claim, that claim cannot generally be 'recharacterized' as a federal claim for the purposes of removal." *Roddy v. Grand Trunk W. R.R. Inc.*, 395 F.3d 318, 322 (6th Cir. 2005) (quoting *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 515 (6th Cir. 2003)).

The "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow*, 478 U.S. at 813. Further, "the existence of a federal defense normally does not create statutory 'arising under' jurisdiction, and a defendant may not [generally] remove a cause to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law[.]" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004) (internal citations and quotation marks omitted) (alteration and emphasis in original); *see also Tisdale v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, Local 704*, 25 F.3d 1308, 1313 (6th Cir. 1994) (defensive assertion of federal statute "does not raise a federal question for removal purposes").

**III.   Analysis**

Defendants argue that the PREP Act completely preempts Burris's state-law claim for willful misconduct and, accordingly, this action should not only be removed to federal district court but also

6

transferred to the United States District Court for the District of Columbia. (Doc. No. 16, PageID# 132-39.) As set forth below, this Court finds that Burris's claims fall outside the scope of the PREP Act and, accordingly, must be remanded to state court. Therefore, this Court does not consider the complete preemption issue.

### A. The PREP Act

The PREP Act empowers the Secretary of the Department of Health and Human Services to "'to deem an event a 'public health emergency' and then take action to utilize funds established by the Treasury to manage the emergency.'" *Bolton v. Gallatin Ctr. for Rehab. & Healing, LLC*, 535 F. Supp. 3d 709, 715 (M.D. Tenn. Apr. 21, 2021) (citing *Sherod v. Comprehensive Healthcare Mgmt. Servs., LLC*, No. 20-cv-1198, 2020 WL 6140474, at *6 (W.D. Pa. Oct. 16, 2020) (citing 42 U.S.C. § 247d(a)); *see also* 42 U.S.C. § 247d(b)(1)). If the Secretary determines that a public health emergency exists, the Secretary may make a declaration recommending "manufacture, testing, development, distribution, administration, or use of one of more covered countermeasures" to combat the emergency. 42 U.S.C. § 247-6d(b)(1). In March 2020, the Secretary declared SARS-CoV-2 and the resulting disease, COVID-19, to be a public health emergency under the PREP Act. *Bolton*, 535 F. Supp. 3d at 715.

The PREP Act provides that covered persons "shall be immune from suit and liability under Federal and State law" for "all claims for loss caused by, arising out of, relating to, or resulting from" the "administration" or "use" of a "covered countermeasure." 42 U.S.C. § 247d-6d(a)(1). The only exception to the PREP Act's immunity is willful misconduct claims. 42 U.S.C. § 247d-6d(d)(1) ("[T]he sole exception to the immunity from suit and liability of covered persons set forth in subsection (a) shall be for an exclusive Federal cause of action against a covered person for death or

7

serious physical injury proximately caused by willful misconduct . . . ."). However, to fall under the PREP Act, a willful misconduct claim must still involve the "administration" or "use" of a "covered countermeasure." *See Singer v. Montefiore, et al.*, --- F. Supp. 3d, ---, 2021 WL 6111671, at *3 (N.D. Ohio Dec. 27, 2021) (appeal docketed 3/28/2022) ("Put another way, the path to the [willful misconduct] exception in subsection (d) of the statute runs through subsection (a), which requires ["administration" or "use" of] covered countermeasures."); *see also Rosen v. Montefiore, et al.*, --- F. Supp. 3d ---, ---, 2022 WL 278106, at *3 (N.D. Ohio Jan. 31, 2022) (appeal docketed 3/2/2022).

"Covered countermeasures" are defined as qualified pandemic or epidemic products, drugs and biological products authorized for emergency use, security countermeasures, and respiratory protective devices. *See* 42 U.S.C. § 247d-6d(i)(1). The Secretary's March 2020 declaration identified covered countermeasures to include "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom, or any device used in the administration of any such product, and all components and constituent materials of any such product." Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198 (Mar. 17, 2020).

### B. Burris's Claims Do Not Fall Under the PREP Act

In her Motion, Burris argues that none of her claims fall under the PREP Act, and therefore are not subject to federal subject matter jurisdiction, because she does not allege any injury related to the administration or use of a covered countermeasure. (Doc. No. 12, PageID# 66-71.) Burris argues that myriad other federal district courts have concluded that allegations of inaction or failure to provide adequate protection or countermeasures fall outside the PREP Act. (*Id.* at PageID# 70-71.)

Burris argues that her allegations are no different. (*Id.*) She asserts that her allegations against Defendants, including Defendants' alleged failure to follow infection control and prevention protocols, ensure adequate staffing and testing procedures, and intentional falsification of COVID-19 test results, stem from the Defendants' "reckless failures and intentional wrongdoing," not their actions in administering a covered countermeasure. (*Id.*)

In their Opposition[2], Defendants argue that Burris's claims specifically relate to the PREP Act because she alleges that Leonard's injuries and death "were related" to Defendants' alleged willful falsification of Leonard's COVID-19 test. (Doc. No. 14, PageID# 131.) Defendants contend that the PREP Act does not require that the use or administration of a covered countermeasure be the exclusive cause of death, but only that Burris's claims "relate to" the administration of a countermeasure. (*Id.*)

The Court concludes that none of Burris's claims fall under the PREP Act because Burris does not assert that Leonard's death was "caused by, arose out of, related to, or resulted from" the "administration" or "use" of the identified "covered countermeasures." *See* 42 U.S.C. §§ 247d-6d(a), 247d-6d(d). First, to the extent Burris's claims are based on Defendants' failure to provide appropriate infection control and prevention measures, including by failing to provide medical services, provide appropriate staffing, and establish protocols and policies, as well as care standards for physicians and nurses, such claims fall outside the scope of the PREP Act. (*See* Doc. No. 1-2, ¶¶ 17-24.) Policies, procedures, protocols, and staffing assignments are not covered countermeasures. *See* Declaration Under the Public Readiness and Emergency Preparedness Act for Medical

---

[2] Because Hyman's Opposition is substantively identical to the Facility Defendants' Opposition, all citations will be to the Facility Defendants' Opposition.

9

Countermeasures Against COVID-19, 85 Fed. Reg. 15,198, 15,200 (Mar. 17, 2020). *See also, e.g., Rosen*, --- F. Supp. 3d at ---, 2022 WL 278106, at *3.

Second, Burris's claims are based on Defendants' inaction, not the "administration" or "use" of covered countermeasures.  The Secretary defines "administration" of a covered countermeasure to mean the "*physical* provision of the countermeasures to recipients."  Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198, 15,200 (Mar. 17, 2020) (emphasis added).  Here, the crux of Burris's claims is that Leonard died because Defendants *failed* to take reasonable steps to protect him, and other residents, by implementing infection control and prevention policies and procedures.  Defendants' failure to act cannot be construed to be administration—i.e., physical provision—of any kind of covered countermeasure.  *See, e.g., Rosen*, --- F. Supp. 3d at ---, 2022 WL 278106, at *3 (concluding that the plaintiffs' claims were based on the defendants' failure to administer or use handwashing, masks, and testing devices, and therefore did not fall within the scope of the PREP Act); *Dupervil v. Alliance Health Ops., LLC*, 516 F. Supp. 238, 255 (E.D.N.Y. 2021) (concluding that the defendants' alleged failures, including failing to take steps to separate residents, enforce social distancing, restrict visitors, ensure adequate staffing levels, enforce mask-wearing, and screening for COVID-19 symptoms among building entrants, "cannot be said to be administering—or even prioritizing or purposefully allocating—a drug, biological product, or device" such that they fall within the ambit of the PREP Act); *Winn v. Cal. Post Acute LLC*, 532 F. Supp. 3d 892, 899 (C.D. Cal. 2021); *Estate of Maglioli v. Andover Subacute Rehab. Ctr. I*, 478 F. Supp. 3d 518, 531 (D.N.J. 2020), *aff'd sub nom. Maglioi v. All. HC Holdings LLC*, 16 F.4th 393 (3d Cir. 2021) (observing that the PREP Act "is designed to protect those who employ countermeasures, **not those who decline to employ them**") (emphasis

added); *Segel v. Sunray Healthcare Center*, No. CV 21-7468 DSF, 2021 WL 5755639, at *2 (C.D. Cal. Dec. 2, 2021) (appeal docketed 12/30/2021) ("The Plaintiff here complains, in part, of a *failure to use* covered countermeasures. If Defendants' argument were accepted, patients whose healthcare providers did nothing would have worse recourse to compensation than patients whose healthcare providers tried in good faith to apply covered countermeasures."); *Hopman v. Sunrise Villa Culver City*, No. 2:21-cv-01054-RGK-JEM, 2021 WL 1529964, at *5 (C.D. Cal. Apr. 16, 2021); *Shapnik v. Hebrew Home for the Aged at Riverdale*, 535 F. Supp. 3d 301, 322 (S.D.N.Y. Apr. 26, 2021).

Further, the Secretary made clear that only a narrow type of "inaction claim" is viable under the PREP Act: a "purposeful allocation" claim, wherein there are limited covered countermeasures available, and there was a failure to administer a covered countermeasure to one individual because it was administered to another individual. Fourth Amended Declaration, 85 Fed. Reg. 79190, 79,197 (Dec. 9, 2020). Here, there are no allegations that Leonard's death was the result of purposeful allocation of personal protective equipment or care to other individuals. *See, e.g., Winn*, 532 F. Supp. 3d at 899.

Moreover, falsifying COVID-19 test results is not the "administration" or "use" of a covered countermeasure. *See Rosen*, --- F. Supp. 3d at ---, 2022 WL 278106, at *3 (concluding same). Nor is intentionally obscuring the number of active COVID-19 cases at the facility to hide a COVID-19 breakout within the facility the "administration" or "use" of a covered countermeasure. Though Burris's allegations regarding Defendants' falsification of test results references COVID-19 tests, Burris does not allege that Defendants injured Leonard by physically providing him a COVID-19 test. Rather, Burris's allegations revolve around Defendants' (alleged) decision to suppress accurate COVID-19 case counts and falsify test results, misleading residents and their families. Indeed, it is

11

irrelevant whether any COVID-19 tests were physically provided in the first place because, according to Burris's Complaint, Defendants' test results were intentionally faked and entirely unrelated to the actual test result. Thus, it cannot be said that Defendants' fake test results "related to" the administration of a covered countermeasure. The Court agrees with the *Rosen* court that "[t]his is not conduct contemplated within the scope of the Act." *Id.*

Finally, the Court is unpersuaded by Defendants' assertion that Burris's claims "relate to" the administration of a covered countermeasure because she "explicitly alleges" in paragraphs 19, 30, and 50 of the Complaint that Leonard's injuries and death "were related to the willful falsification and/or *improper use* of COVID-19 diagnostic tests administered by Defendants to Decedent . . . ." (Doc. No. 16, PageID# 131, emphasis added.) Contrary to Defendants' assertion, Burris does not allege the "*improper use*" or "*administration*" of COVID-19 diagnostic tests. (*Id.*, emphasis added.) Burris does *not* allege anywhere in her Complaint that Leonard was injured due to Defendants' improper "administration" or "use" of a COVID-19 test. The Secretary defines "administration" of a covered countermeasure to mean the "*physical* provision of the countermeasures to recipients." Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198, 15,200 (Mar. 17, 2020) (emphasis added). As Burris argues in her Reply to the Facility Defendants' Response to Supplemental Authority, "[t]he Defendants did not injure or kill someone by . . . swabbing their nose with a PCR test," or otherwise injure Leonard due to Defendants' physical provision of a COVID-19 test. (Doc. No. 21, PageID# 251.)

First, Burris alleges in paragraph 19 that "COVID-19 test *results* were falsified or improperly ran by all Defendants." (Doc. No. 1-2, ¶ 19, emphasis added.) As discussed above, the falsification

12

of COVID-19 test results is not related the "administration"—i.e., the physical provision—or "use" of a covered countermeasure.

Second, Burris's allegations in paragraphs 30 and 50 are broader than Defendants make them out to be. Burris alleges that Defendants "conducted improper and false testing":

> 30. Furthermore, from on or about September 2020 through the end of October 2020, Defendants recklessly, intentionally, willfully, and wantonly **conducted improper and false testing of Plaintiff's decedent for SARS-CoV-2.** Further, Defendants recklessly, intentionally, willfully, and wantonly hid the fact that other patients and residents of Montefiore were infected with SARS-CoV-2 and/or COVID-19, thereby exposing Plaintiff's decedent and all other residents/patients of Montefiore to SARS-CoV-2.
>
> . . .
>
> 50. Furthermore, on or about October 13, 2020, Defendants[ ] recklessly, intentionally, willfully, and wantonly **conducted improper and false testing of Plaintiff's decedent for SARS-CoV-2.** Further, Defendants recklessly, intentionally, willfully, and wantonly hid the fact that other patients and residents of Montefiore were infected with SARS-CoV-2 and/or COVID-19, thereby exposing Plaintiff's decedent and all other residents/patients of Montefiore to SARS-CoV-2.

(Doc. No. 1-2, ¶¶ 30, 50, emphasis added.) The word "conduct" means "to direct or take part in the operation or management of; to direct the performance of; to lead from a position of command." *Conduct*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/conduct (last visited 4/13/2022). In other words, Burris alleges that Defendants directed, managed, and/or led improper *and false* COVID-19 testing efforts, including by intentionally falsifying test results to hide their facility's burgeoning COVID-19 case numbers. This Court declines to construe Burris's allegations that Defendants "recklessly, intentionally, willfully, and wantonly conducted improper and false testing" to mean that Defendants acted with malicious intent in the actual administration or use of a nasal or cheek swab on any given person, including Leonard. Rather, the Court construes these allegations to be part and parcel of Burris's allegations that Defendants directed or managed an

intentional effort to falsify and hide positive COVID-19 test results from residents to obscure the COVID-19 outbreak coursing through the facility.³

Accordingly, the Court concludes that Burris's claims do not fall within the scope of the PREP Act and, therefore, are not subject to federal question jurisdiction under § 1331 because they do not relate to the administration or use of covered countermeasures. Because the Court concludes that Burris's claims do not fall within the PREP Act, the Court does not consider the complete preemption issue.

### C.     Federal Officer Removal

Under 28 U.S.C. § 1442(a), certain officers of the United States may remove actions to federal court. 28 U.S.C. § 1442(a). To do so, the officer-defendant must first establish he is a person within the meaning of the statute who "act[ed] under [a federal] officer[.]" *Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010) (internal quotations omitted). Second, he must also establish that he "performed the actions for which [he] is being sued under color of [federal] office[.]" *Id.* (internal quotations omitted). Finally, he must show that he "raised a colorable federal defense." *Id.* Private parties may invoke the federal officer removal statute if they can demonstrate that they satisfy these requirements. *Id.*

First, the Facility Defendants, King, and Gelle plainly did not raise § 1442(a) as a ground for removal. (*See* Doc. No. 1.) They may not raise a new substantive ground for removal in opposing Burris's Motion for Remand. *See Hahn v. Rauch*, 602 F. Supp. 2d 895, 909 (N.D. Ohio Aug. 15,

---

³ Moreover, Burris's allegations that Defendants "conducted improper and false testing" are substantially similar to "improper testing" allegations found in the complaints at issue in *Rosen v. Montefiore, et al.*,. *See* Rosen Compl., ¶¶ 22, 34; Connor Compl., ¶ 16, *Rosen*, --- F. Supp. 3d at ---, 2022 WL 278106, at *3.

2008) ("A defendant cannot argue a new substantive ground as a basis for removal in opposing remand.").

Second, to the extent that Hyman raised § 1442(a) as a ground for removal,[4] his argument is not well-taken. Hyman asserts that he acted under federal authority in responding to the COVID-19 pandemic as an employee of a nursing home that participates in the Medicare and Medicaid programs. (Doc. No. 16, PageID# 143.) This assertion lacks merit. Hyman cannot show that he acted under federal authority within the meaning of the removal statute. *See Maglioli*, 16 F.4th at 404 (holding that nursing home defendants could not seek removal based on federal officer removal statute). At most, Hyman complied with regulations and orders promulgated by CMS during the pandemic. He is not a government contractor, is not delegated federal authority, and did not provide any service that the federal government would otherwise provide. *See Singer*, --- F. Supp. 3d at ---, 2021 WL 6111671, at *7; *Rosen*, --- F. Supp. 3d at ---, 2022 WL 278106, at *5 (citing *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007); *In re Commonwealth's Motion to Appoint Couns. Against or Directed to Def. Ass'n of Philadelphia*, 790 F.3d 457, 469 (3d Cir. 2015); *Bennett*, 607 F.3d at 1089)); *Hudak v. Elmcroft of Sagamore Hills, et al.*, --- F. Supp. 3d ---, ---, 2021 WL 7966603, at *13 (N.D. Ohio

---

[4] It is unclear whether Hyman properly raised § 1442(a) as a ground for removal. First, Hyman's sole mention of § 1442(a) in his Notice is nearly impossible to parse:

> This case is removable under 28 U.S.C.A. § 1441(a) on the basis of 'original jurisdiction' because Plaintiff's Complaint asserts a claim 'arising under' federal law within the meaning of § 1331. **Original jurisdiction is also through an action pursuant to 28 U.S.C. §1442(a)(1).** The Court also has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

(*Id.* at ¶ 12, emphasis added.) Further, Hyman offers no further argument regarding federal officer removal jurisdiction in his Notice. (*Id.*) Second, the Facility Defendants already removed this case **three days** prior to Hyman's removal, **with Hyman's consent.** (Doc. No. 1, ¶ 12, ". . . Defendants Ariel S. Hyman, Tina King, and Marie Gelle consent to removal of this action to the United States District Court for the Northern District of Ohio, Eastern Division.") Thus, Hyman's consent to the 11/5/2021 removal implies that he consented to removal on the basis of federal question jurisdiction *only*.

Aug. 19, 2021); *Segel*, 2021 WL 5755639, at *1. Therefore, Hyman may not remove this case to federal court under § 1442(a).

### D. Defendants' Motion for Leave to File Declaration *Instanter*

On December 29, 2021, Burris filed a Notice of Supplemental Authority, directing the Court's attention to a recently issued decision in a substantially similar consolidated case against these same Defendants, *Singer v. Montefiore, et al.* (Doc. No. 21.) The *Singer* court concluded that the plaintiffs' state-law claims should be remanded because the defendants failed to "place[ ] sufficient information in the record from which the Court can determine that these countermeasures meet the statutory definition or the Secretary's emergency declaration." *See Singer*, --- F. Supp. 3d at ---, 2021 WL 6111671, at *6. The Facility Defendants filed a Response to Plaintiff's Notice of Supplemental Authority, and Motion for Leave to File Declaration *Instanter*, seeking to file a declaration from former Montefiore Chief Operating Officer Richard Schwalberg to confirm that all facility COVID-19 tests were FDA-authorized. (Doc. No. 22, PageID# 215.)

The Court's rationale for remanding Burris's Complaint is different from that of the *Singer* court. Therefore, the Facility Defendants' proposed declaration is irrelevant to the Court's analysis and resolution of the pending Motion for Remand. Accordingly, the Facility Defendants' Motion for Leave is denied.

## IV. Conclusion

For the reasons set forth above, Burris's Motion for Remand is GRANTED. The Facility Defendants' Motion for Leave to File Declaration *Instanter* is DENIED. The case is REMANDED to the Court of Common Pleas of Cuyahoga County, Ohio, from which it was removed.

**IT IS SO ORDERED.**

Date: April 14, 2022

*s/ Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE